IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BILLY C. JOHNSTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:02-CV-0125 |
| | § | |
| JO ANNE BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff BILLY C. JOHNSTON, brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability, and disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
THE RECORD

Plaintiff applied for supplemental security income benefits (SSI) under Title II of the Social Security Act on September 1, 1999 (Transcript [hereinafter Tr.] 47), with a protected filing date of August 23, 1999. (Tr. 11). Plaintiff alleges he became disabled on August 21, 1996 due to a combination of impairments including back surgery, depression, high blood

pressure, and vision problems. (Plaintiff's Brief at 3). Plaintiff cites to an on the job injury which occurred September 11, 1993 and which ultimately led to back surgery on October 15, 1996. (*Id.*). Plaintiff was born March 2, 1947 (Tr. 47, 278), and possesses a seventh grade education. (Tr. 281). Plaintiff's past relevant work includes work as a meat cutter and meat cutter/market manager. (Tr. 75, 281).

Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on August 14, 2001. (Tr. 275-304). On September 17, 2001, ALJ William F. Nail, Jr., rendered an unfavorable decision, finding plaintiff not entitled to benefits at any time relevant to the decision. (Tr. 11-17). The ALJ determined plaintiff has the medically determinable impairments of back issues post-surgery, depression, high blood pressure, and vision problems that are considered "severe." (Tr. 12, 16). However, the ALJ found plaintiff's impairments "do not meet or medically equal one of the listing of impairments in Appendix 1, Subpart P, Regulation No. 4." (Tr. 16). The ALJ noted he, "carefully reviewed all of the medical opinions in the record regarding the severity of Mr. Johnston's impairments," and that while he found plaintiff's claims regarding his limitations generally credible, he found such did not support a finding of disability. (Tr. 16, Finding #5 and #6). The ALJ then determined plaintiff retained the, "residual functional capacity [RFC] for the performance of routine work activities at a restricted 'light' exertional level." (Id., Finding #7). Based on this RFC, and upon vocational expert (VE) testimony, the ALJ found plaintiff could not return to the work he had performed in the past, (*Id.*, Finding #8), but further found that VE, "testimony supports a finding that other work exists in significant numbers in the regional and national economies which Mr. Johnston is capable of performing." (*Id.*, Finding #9).  The ALJ thus concluded plaintiff was

not under a disability at any time through the date of his decision. (Tr. 17).

Upon the Appeals Council's denial of plaintiff's request for review on February 8, 2002, the ALJ's determination that plaintiff is not under a disability became the final decision of the Commissioner. (Tr. 5-6). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164.

Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

III.
ISSUES

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the national economy, and whether the proper legal standards were applied in reaching this decision. To this extent, plaintiff presents the following issues:

1. Whether it was error, as a matter of law, for the ALJ to omit preparing and attaching a Psychiatric Review Technique Form to his hearing decision;

2. Whether it was error for the ALJ to omit discussion and analysis of the proper standard for determining the severity of an impairment;

3. Whether it was error for the ALJ to fail to accord considerable weight to plaintiff's treating physicians;

4. Whether the ALJ erred by not properly supporting the finding of severe impairments with substantial evidence; and

5. Whether the ALJ erred by failing to request an "updated" residual functional capacity assessment.

IV.

## MERITS

### Issue #1
### The Psychiatric Review Technique Form

Plaintiff first complains the ALJ committed reversible error by not completing and attaching to his decision, a Psychiatric Review Technique Form (PRTF) to evaluate plaintiff's mental status. Plaintiff cites numerous cases and 20 C.F.R. § 404.1520a, which required ALJ's to complete a PRTF, however, as argued by defendant, such cases pre-date 1996 and the statute cited by plaintiff was not the version in effect at the time of the ALJ's decision. The current version of 20 C.F.R. § 404.1520a no longer requires an ALJ to attach a PRTF, but instead, requires the ALJ to discuss the criteria set forth in the PRTF, in the body of his decision. 20 C.F.R. § 404.1520a(e)(2001). Because ALJ Nail, Jr., discussed the PRTF criteria in the body of his decision (Tr. 15), he did not commit reversible error.

### Issue #2
### The Proper Standard for Determining the Severity of an Impairment

Plaintiff next argues the ALJ did not properly evaluate the severity of his alleged impairments as evidenced by his failure to indicate, in his opinion, that such evaluation was completed in accordance with *Estren v. Heckler*, 745 F.2d 340 (5th Cir. 1984) and *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). The ALJ expressly found that plaintiff,

> [H]as a hypertension related central retinal vein occlusion in his right eye.[1] However, he has indicated that he has no problems driving, watching television, or reading a newspaper. His driver's license is only restricted for the use of corrective lenses. He has driven passengers part time for an automobile dealership. As this condition imposes no more than minimal functional limitations, it is not considered a "severe" impairment.

(Tr. 13). As such, defendant is correct that the ALJ's analysis was consistent with the

---

[1] Plaintiff testified at the hearing that he was blind in his right eye. (Tr. 280).

requirements of *Stone v. Heckler*. Further, while the ALJ found plaintiff's remaining impairments, his back impairment and his depression, to be severe, he proceeded past Step 2 of the sequential analysis. Therefore, *Stone v. Heckler* would not apply to these impairments. See *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) citing *Shipley v. Secretary,* 812 F.2d 934, 935 (5th Cir.1987),

("Even if an impairment is deemed 'severe' under the standard of *Stone v. Heckler*, this fact does not require a remand when the Secretary has gone beyond the second step, as here, as not all 'severe' impairments are disabling and thus *Stone v. Heckler* would not apply.")(citation omitted). Plaintiff's claim must fail.

Issue #3<br>
Plaintiff's Treating Physicians

Plaintiff contends the ALJ failed to accord considerable weight to his treating physician opinions. (Plaintiff's Brief at 7). Plaintiff cites a May 11, 2000 report from Dr. Walter Piskun wherein the doctor states, "the patient probably [is] not going to be employable." (Plaintiff's Brief at 7, Tr. 251). The doctor goes on to say, and plaintiff has recited that, "he is unemployable unless he is retrained into something that would not require heavy lifting and give him the ability to change positions frequently." (*Id*.). Plaintiff then refers to a November 11, 1999 report by Dr. Piskun wherein he limited plaintiff, if he should return to work, to lifting no more than 25 pounds. (Plaintiff's Brief at 8, Tr. 256). Finally, plaintiff refers to the finding of Dr. Grace Stringfellow on March 7, 2001, that plaintiff should decrease lifting to 10 to 20 pounds with no repetitive bending. (Plaintiff's Brief at 8, Tr. 253). Plaintiff seems to allege that ALJ completely disregarded these opinions and instead substituted his own.

As articulated by defendant, the ALJ not only considered such opinions, but specifically

referenced them in his opinion. The ALJ stated,

> The next sequential medical evidence is a report from Dr. Piskun in November 1999....Dr. Piskun thought that Mr. Johnston should not lift more than twenty-five pounds and needed to be able to change positions hourly....A later FCE, done in December 1999, resulted in G. Stringfellow, M.D., limiting Mr. Johnston to lifting no more than twenty to thirty pounds and to limit repetitive bending as well as overhead work....Stringfellow amended his [her] previous opinion in March 2001 and indicated that Mr. Johnston's lifting restriction should be decreased to ten to twenty pounds, and he should avoid repetitive bending. In May 2000, Dr. Piskun again stated that Mr. Johnston should be retrained in light duty work which would allow him to change positions, and heavy lifting would not be required.

(Tr. 14). The ALJ then found,

> The medical sources of record have stated that Mr. Johnston has additional limitations in repetitive bending; that he should perform no overhead work; and that he should be afforded a sit/stand option. Accordingly, I find that Mr. Johnston retains a physical residual functional capacity for the performance of a restricted range of "light" work, and that he regained this capacity within twelve months of his alleged onset date.

(Id.). It cannot be said the ALJ's finding was inconsistent with the opinions of Doctors Piskun and Stringfellow, or that the ALJ did not give due consideration to such opinions. Plaintiff's claim must fail.

Issue #4
Substantial Evidence

Plaintiff next alleges the ALJ did not expressly consider the combined effects of his back problems and depression. Specifically, plaintiff alleges the ALJ, "concluded without satisfactory analysis or substantial evidence that the combination of disorders of the spine and depression did not meet or equal a listed impairment." (Plaintiff's Brief at 9). It appears plaintiff alleges the ALJ found a combination of impairments existed in able to avoid using the "Grids" for a determination of disability or non-disability and/or that the combined effect of these impairments

could render him disabled under Rule 201.02 of the Appendix 2 guidelines for light or sedentary work. (*Id.*). As argued by defendant however, "Rule 201.02 cannot apply to Plaintiff's claim, as it pertains to claimants over age 55 who lack transferable work skills. See 20 C.F.R. Par 404, Subpart P, Appendix 2, Table No. 1, Rule 201.02" (Defendant's Brief at 6). Further, the defendant stated,

> Plaintiff has not identified any evidence that would cast doubt upon the ALJ's functional capacity finding. Defendant already has noted that the ALJ properly evaluated the medical opinions of record regarding Plaintiff's physical capacity. None of these physicians made any findings as to mental impairments that conflict with the ALJ's finding that Plaintiff retained the capacity for work not requiring more than routine, non-complex activities. Dr. Hussain's examination report[2] also does not conflict with the ALJ's finding, particularly in light of his assignment of a global assessment of functioning (GAF) of 60[3], reflecting only moderate impairment.

(Defendant's Brief at 6-7)(citations omitted). In light of the fact the ALJ took testimony from a Vocational Expert who stated he was well aware of plaintiff's impairments, and that, despite their combined effect, there were a significant number of jobs in the national economy which plaintiff could perform, the Court agrees with defendant's argument.

As a sub-issue, plaintiff appears to complain the ALJ failed to make a proper finding about his transferable skills and that the ALJ should not have applied the age classifications in light of plaintiff's "borderline" age. At the hearing, the VE testified plaintiff had gained skills in his past relevant work which would be transferrable to other jobs in the national economy. (Tr.

---

[2] Dr. Hussain performed a psychiatric evaluation on February 10, 2000 upon referral from the Texas Rehabilitation Commission. (Tr. 210-212).

[3] GAF refers to the Global Assessment Functioning Scale which ranges from 1, persistent danger of severely hurting self or others, or unable to care for herself, to 100, superior functioning. Such is an assessment tool used in the mental health profession.

298-299).[4] While the ALJ did not specifically find plaintiff had transferable skills, he referenced the opinion of the VE and, as argued by defendant, made the implicit finding that such was the case. As to plaintiff's complaint regarding his "borderline" age, defendant is again correct, such matter is within the discretion of the ALJ. See *Harrell v. Bowen*, 862 F.2d at 479. Plaintiff's claim is without merit.

## Issue #5
### The "Updated" Residual Functional Capacity Assessment

Plaintiff next alleges, despite the lack of Fifth Circuit authority on the issue, that the ALJ was required to obtain an "updated" RFC evaluation. Plaintiff contends the ALJ consulted reports that, "[W]ere prepared more than one or two years prior to the claimant's hearing in August of 2001." (Plaintiff's Brief at 13). As discussed *supra*, the ALJ cited reports from Doctors Piskun, Stringfellow, and Hussain dated February and May 2000 and March 2001. Such reports do not appear to be so remote in time that an ALJ would be obligated to request an updated RFC absent evidence plaintiff's condition had deteriorated to the degree such would be warranted, and such does not appear to be the situation in this instant case. As discussed *supra*, the ALJ considered the assessments of two (2) of plaintiff's treating physicians. Such reports did not appear to be outdated and at the hearing, plaintiff testified about his limitations. Plaintiff's testimony did not appear to differ from the limitations imposed by these doctors. (Tr. 291-296). There is nothing in the record to indicate the ALJ erred in this regard.[5]

---

[4] The VE testified a couple of skills obtained as a meat cutter would be transferrable but that it would not be a "heavy transferable thing." (Tr. 298).

[5] Plaintiff contends the ALJ mischaracterized claimant's testimony regarding his ability to walk two miles. (Plaintiff's Brief at 13). As stated by plaintiff in his brief, he testified he used to walk two miles but hadn't done so in a while, probably a year. (Tr. 290). However, plaintiff later conceded he probably could walk two miles. (Tr. 292). Plaintiff's claim that the ALJ mischaracterized this fact is without merit.

## V.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner be AFFIRMED.

## VI.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record and to the Assistant United States Attorney by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 8th day of September 2005.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).